Our next case is 3G Licensing, S.A. v. Honeywell, 2023-15-57. We're ready when you are, Mr. DeMarco. Good morning, Your Honors. My name is Andrew DeMarco, an associate at Devlin Law Firm, here on behalf of Appellant 3G. May it please the Court. The matter before the Court today is straightforward. First, did the Board err in determining that 3G waived its arguments regarding Slide 8? And second, was that error harmless? The Board did err that error was not harmless. It was because the Board precluded and failed to adequately consider this argument that the Board failed to find written description support in the foreign application from which the 653 patent derived its priority date. As a result, the Samsung reference, the key reference to Honeywell's invalidity analysis, which postdates the priority date of the 653 patent, was permitted to be considered as prior art and ultimately led to the invalidation of the challenge claims. So I want to turn first to this issue of waiver. And in finding that 3G waived its arguments regarding Slide 8, the Board erred in two ways. First, it misapplied and misinterpreted this Court's ruling in in re nuvasive, a case which turns on intentional abandonment of an argument, a fact which is not present here. Second, its reliance on the consolidated trial practice guide is ineffective. Under this Court's precedence, the guide is merely that, a guide. And it is to be, it must yield as a system when it is at odds with statute, which it is here. And there's no real dis- If it's at odds with the statute, the Board is allowed to adopt its own procedures, right? The Board is allowed to adopt its own procedures. But we have a procedure that says if you don't, if you raise something in the, in the whatever it's called, the first, the pre-response, and don't re-raise it in your final response, then it's waived. So the Board is- Are you saying they're not allowed to adopt that rule? I'm saying they're not allowed to adopt that rule when that rule conflicts with statute. And our argument is it does conflict with statute, and therefore it must fall. Where does it conflict with the statute? It conflicts with the statute when we take a look at 35 U.S.C. 313 and where it combines with 316A.8. Specifically, 316A or 313- But does the statute say the Board can't adopt a waiver rule? The Board, the statute does not explicitly state that, Your Honor, no. But the implications are where we went into the problems, and that's our argument here today. So if we take a look, for example, at Section 313, which is what permits the preliminary response, which Your Honor was referring to. It says that a patent owner is free to file that preliminary response prior to the institution decision. But you don't have to. Correct. We do not have to. And then Section 316A.8 states that the Director shall prescribe regulations, as Your Honor notes, which allow for the response to a petition under Section 313 after an inter partes review has been instituted, with said response including additional factual evidence and expert opinions on which the patent owner relies in support of their response. And then if we look to CFR Section 42120, it states- But in any of this, does it say that the Board can't require you to re-raise arguments in the response that you had in the preliminary response? Well, Your Honor, if I were to point to a specific area, I would say that it's where it says that the 316A.8, where the response to the petition filed after institution is filed under Section 313A.8 as additional arguments. So then what we have is a statutory framework which allows for a preliminary response filed before and then additional arguments filed after. To require- And what's going within to suggest that the Board can adopt a policy of requiring you to re-raise things, particularly if in its institution decision, it rejected the argument that you're relying on? Well, I want to address that argument specifically about the Board rejecting the preliminary response in a moment. But to that argument, the Board is allowed to adopt these regulations insofar as it doesn't conflict with statute, insofar as they are reasonable. The Board statute as read and interpreted by the Board right now- Let's just assume that statute is not enough to prohibit the Board's waiver rule. Sure. Why isn't it reasonable? So the framework that has been set up by the Board in this circumstance requires the patent owner to reproduce in hake verba the exact arguments from its preliminary response in whole to its patent owner's response. That creates an issue for two reasons. You were warned to raise that argument. I'm sorry, Mr. First Attorney? You were warned to raise the argument at a later time. We were informed by the Court's scheduling order that the argument may be waived. And I note that it is distinct from the waiver basis. Would that kind of alert you to a fact you better pay attention to the issue? Well, Your Honor, I would say that we did raise this argument. This argument is referred to in both the patent owner's response and in the SOAR reply. Now, admittedly, it is true that the argument is raised more fulsomely and fully developed in the pre-institution decision documents. Well, now you're wading into whether you actually waived it or not, whether it's permissible for the Board to adopt this rule. I want you to finish out your thought about why it's not reasonable for the Board to require you to do this. Well, yes, Your Honor. So there's two reasons strictly as to why it's illogical and thus can't be allowed for that reason. So as I was stating earlier, it's the reproduction of the exact words, literally, to copy and paste those arguments from the patent, from the preliminary response. I don't think that they're requiring that. Well, Your Honor, it seems to me that that is, in fact, the case. If the argument is not raised. But the requiring is if you file a preliminary response, and then they issue the institution decision, you need to react to the institution decision. And if they rejected an argument in the institution decision that you raised in the preliminary response, then you need to re-raise it and explain why they're wrong. That seems inherently reasonable. Counsel, even if you're correct that there was no waiver, don't you lose on the merits? Look at footnote 6 on Appendix 40 of the Board's opinion. They say even without waiver, you lose. So, Your Honor, I can test that point on several grounds. So, first, if we take a look at the Board's alleged addressment of this Slide 8 argument, we note here that we have a single sentence without any indication to the record as to why there is, why this is, in fact, the case, which is contrary to Princeton Vanguard, as we discussed in the Blueprint for 35. We don't need to touch on that in great detail. But, indeed, nor does it provide a single legal citation for its decision not to consider Slide 8 for this purpose, because it postdates the Korean application. Nor could it, as that's directly contrary to this Court's ruling, which we, again, discussed in 35, MGen Inc. v. Sanofi, which states that it's permissible to use evidence that postdates in order to illustrate what a procedo would understand relevant at the time, which was the entire point of the holistic argument that Pat Miller was making. And that ultimately comes down to one of the key issues with this footnote. It's that, if we see here on Note 6, what the Board is saying is that we do not agree that Slide 8 of SAMHSA necessarily means that the RRI disclosed in the 6839 application, that is, the application upon which the 6R3 patent relies for its priority date, indicates whether the mobile station has enough power and data to increase the data transmission rate. That is simply not what we argued below. Rather, what we argued below was the idea that a person having ordinary skill in the art at the time of invention would look at the Korean application and understand that the reverse rate indicator there was the only logical area where this information could come from, and would thus understand that there's written description support in the Korean application when looked at holistically. That's what our expert testified to. That is what lies in the record and is addressed here only with attorney argument. So I disagree, Your Honor, with the concept that we would lose on the merits below. And indeed, if we, this footnote, as I mentioned, has the second sentence, which was contradicted by this Court's law, and then also notes that there's insufficient information in the record to conclude by a preponderance of the evidence that the RRI described in SAMHSA Slide 8 is the same RRI as disclosed in the first Korean application. We argue in our briefing that that is putting the burden on the patent owner. To disprove invalidity, which is contrary to Court's ruling in dynamic drinkware. Well, the burden is to overcome a reference, which is your obligation, right? Well, the burden is, as I understand dynamic drinkware, the way that the burden moves is the petitioner has to put on that prima facie case. The patent owner has a duty to produce evidence. To overcome a reference. Right, which we've produced the evidence. But that's not different from a, that's a burden of production as opposed to a burden of persuasion. And here the burden of persuasion is what is put on the patent owner. And that is something we can test. And if that's not the case of what the board was saying, then they needed to be more clear in what they were doing in their footnote. Instead, we have barely two sentences, which is set to address this entire argument. So that, you know, that alone would require remand to address. Didn't they address it in the prior institution decision? Well, Your Honor, if that is the case, so they did address this argument in the prior institution decision. But if the board was to be incorporating that decisions as made in an institution decision, it does not do so here. They didn't have to because you didn't respond to it. I disagree there, Your Honor. We referenced it. You didn't put it in your response brief. I disagree, Your Honor. We referenced it. We referenced it in both the patent owner's response and in the SIR reply. And it goes to this holistic argument.  I'm sorry, Your Honor? Not in the same way you did in your preliminary response. It's true. It is not done in the same way. That is correct. But it was not an argument that we abandoned at any juncture, which is what they rely on in citing period. It's an offense of the board for not fulsomely addressing an argument that you didn't re-raise in fulsome detail. I'm sorry, Your Honor. I missed the first part of that. It's okay. Go on. Very well. So inane and evasive is what they rely on, though, for that, as the case law for showing what is in reality what they say should be forfeiture, what they say is waiver, a distinction which is blurred by both the board and by Honeywell in this issue. Are you suggesting that the board can only find, like, legal waiver-waiver under its rule or what they really mean is forfeiture? Because the courts, for years, including our courts, have blurred the line between. And what the board means here is forfeiture. So what the board means here is forfeiture. They could, that is something that they are capable of finding, but that is still not what occurred here in the circumstances I mentioned. It is raised, the argument is raised in subsequent briefing. I see that I'm getting into my rebuttal time here. Unless Your Honor has further questions, I'd like to reserve this time forward. We will serve it for you. Yes, Your Honor. Mr. Keese. Yes, Your Honor. Good morning, and may it please the Court. Daniel Keese, representing Sierra Wireless, arguing on behalf of appellees Sierra Wireless, Honeywell, Intellix, and Tarion. I think it's worth emphasizing at the outset the broader context of this case before diving into the specifics of the waiver and priority date issues here. The 653 patent and the relevant prior art here came out of proposals to a wireless networking standard-setting process. LG Electronics, the original assignee, proposed one aspect of what is recited in the claims. That's signal point mapping, three possible commands from a base station to a mobile station, telling the mobile station to either increase, decrease, or maintain its data rate. That aspect was not new or non-obvious. LG's most important competitor, Samsung, was also participating in this standard-setting process. Samsung proposed a separate technique that is sending a single IAB bit from the mobile station to the base station in the other direction, whereby the mobile station could signal to the base station, I have enough power and enough data such that I can accept an increased data rate on the reverse link. Samsung's proposal was of a new concept, that is, sending that IAB either by adding a bit to the RRI or by completely redefining the RRI scheme. It's worth emphasizing here that Samsung would have had no reason and would not have needed to propose this IAB to the standard-setting organization if the RRI scheme already included that information in those messages. LG recognized that Samsung had come up with a good idea with this IAB, and specifically incorporated Samsung's IAB concept into its later standard-setting proposals, and explicitly credited Samsung with the idea. That's appendix 2029. Then LG added the IAB concept to a later provisional application and the subsequent non-provisional application that issued as the 653 patent. But, and this is key, LG failed to disclose the Samsung proposal or to credit Samsung before the PTO. After the examiner rejected LG's original idea or the claims that incorporated LG's original idea, LG amended its claims to recite the IAB concept and thus secured allowance. Against this backdrop, it's perhaps unsurprising that the current patent owner has attempted to argue that its earlier first provisional application before the Samsung proposal should be interpreted based upon that later Samsung proposal. But that argument was doomed to fail because it was Samsung and not LG that came up with the IAB concept, so that concept simply is not in the earlier provisional applications. After appellant's slide 8 arguments were rejected by the board at the institution stage, the appellant was expressly warned of the consequences of failing to restate those arguments in its post-institution response. Despite those warnings and the black-letter law of this court, appellants did not include those arguments in their post-institution response. That's a clear waiver. In this case, in order to even garner a remand, appellant has to show error by the board on two counts. First, that there was no waiver, when in fact there was. And second, that there was a lack of substantial evidence supporting the board's ultimate priority date determination. You're saying there was waiver, not forfeiture? I think there was waiver here. So they make an argument about waiver versus forfeiture. I think, well, first of all, they never explain why that distinction has any result in this case. The results are the same. The results are the same. They didn't raise the argument. They didn't preserve the argument. I think the board's rules only go to intentional waiver or that they really mean forfeiture or both. I think the board's rules would apply to both. They use the term waiver. But since to this day, still use the word waiver to encompass both the intentional waiver and forfeiture. We recently made that distinction to make it clear. But I'm sure you can go find dozens of decision positions in the last two years that use waiver in the forfeiture sense. So I just am curious as to if you think the board intended only to apply the strict intentional waiver rule or not. No, I don't think that they intended to only apply the strict intentional waiver rule. But I do think the facts establish an intentional relinquishment here. They made the argument in their preliminary response. They excised that argument from their post-institution response. They were expressly warned of the consequences, both in the trial practice guide and the board's scheduling order, of making that decision. Why don't you get to the merits? Yes. If we don't agree on waiver. Correct. And if there are any other questions on waiver, I'm happy to answer them. But I think Your Honor has correctly asked the questions on waiver. So I'm happy to move on. Even on that point, and this is to Judge O'Rourke's earlier question with respect to footnote six, is it? That the board went ahead and said even if we don't find waiver, we find. And that did reach a determination on that issue. Absolutely correct, Your Honor. The board found waiver and then said even if we didn't find waiver on the specific point of these slide eight arguments from Samsung, even if we didn't find that there was waiver, we find that the preponderance of the evidence shows that the Samsung RRIs are not the same RRIs as the provisional application RRIs. So yes, they addressed the substance. Those slide eight arguments, I would note, in the pre-institution brief that they filed are only a page and a half. And then in the institution decision, the institution decision addresses those for four pages, fully analyzes them. And then they raised no additional arguments, as Judge Hughes, I believe, pointed out. And so they raised no additional arguments at the post-institution phase. And so there was nothing else for the board to really respond to. And so the board restated its earlier conclusions. And I would like to say on the issue of waiver versus forfeiture, this court has recently held in the Interrate Google case, I believe that's 980F3, 862 to 863, explicitly notes that whether the court had referred to waiver or forfeiture in a case, the case law was good for forfeiture as well. So I think that would apply in either case here. Regarding the underlying priority date determination, they have a high burden to overcome. They have to show that there was no substantial evidence to support the board's decision. And here, there was substantial evidence, and the board was objectively correct in determining that the 6839 application fails to disclose the concept of an IAB, a bit sent from the mobile, the base station, to signal whether it has sufficient power and sufficient data in order to accept a data rate, transmitted transmission rate increase. The board's final written decision spends 25 full pages at appendix 15 to 40, analyzing in detail the priority date issues and the arguments made by the appellees and appellants below, and reaches the objectively correct conclusion that the 653 claims that issue cannot claim priority back to the earliest Korean application. Because that earliest Korean application simply has no disclosure of the IAB concept. What it has is a single sentence, repeated three times throughout that provisional application, that just mentions RRIs and says that the RRIs transmit the existing data rate that the mobile station is using, back to the base station. That's all that it discloses. There's nothing in that application, nothing at all, about the concept of the mobile station sending a dedicated bit back to the base station to signal whether it has sufficient power and sufficient data. The board's conclusion here was plainly supported by substantial evidence. My colleague on the other side complains about the brevity of the analysis of the board on the Samsung slide 8 point. But in the context here, where the board was not addressing any additional argument made at the post-institution phase, the final written decision fully and adequately addresses the issues. One point that I'd like to make is there's a distinction here that I think that appellant's briefs blur the lines between, regarding the prior written description disclosure of the earliest provisional application. Appellant repeatedly argues that a positive would note that an RRI, for example, could be used, or was capable of being used, or could be modified to include that IAB. But that's not enough. Under this court's precedent in Lockwood v. American Airlines, there has to be actual written description support for what the claims recite, not just written description that would render those claims obvious. And here there's not even written description that would render those claims obvious. On the factual points, I think the record is very clear that there is no written description support for that IAB concept in the earlier priority application. LG itself explicitly credited Samsung with proposing this concept during the standard setting process. That's at appendix 2029. And it's telling that LG didn't just rely on its earlier provisional application, it filed a subsequent provisional application, and modified the disclosure in its non-provisional application to expressly recite this IAB concept. The fact that they added that disclosure demonstrates that it wasn't in their earlier application. My colleague on the other side also raised the concept of burden shifting. And I just want to note that nowhere in note six of the final written decision, that's appendix page 40, does the board say that the burden of proof is on the patent owner. The board is simply rejecting, in a potentially awkwardly phrased footnote, arguments that the patent owner had actually failed to make during the trial phase. Again here, in order to succeed in this appeal, the appellants have to both win on the issue of waiver, which is a threshold issue that they can't win on. They clearly waive these arguments. But even if they were able to overturn the board's waiver finding, on the merits they lose. There's simply no disclosure in that earlier 6839 application of the IAB concept. I heard my colleague mention this concept of these holistic arguments that the board failed to address. But they never made those arguments. They're not in their brief. This idea, this holistic slide eight of Samsung argument simply doesn't appear in their post-institution response. And fairly right, it's not actually in their preliminary response either. With that, if Your Honors have any more questions, I will answer them. Otherwise, I will yield. Thank you, Mr. Keith. Mr. DeMarco has some rebuttals on. Yes, Your Honor. So I would like to begin by addressing actually the last point my friend at bar made up here regarding no language about a burden shift, the footnote on Apex 40. The language is very clear here from the board. We find insufficient information in the record to conclude by a preponderance of evidence that the RRI described in Samsung slide eight is the same RRI as disclosed in the first Korean application. That's exactly what, or not exactly. That is what they believe patent owners would be arguing. They say that they don't find enough evidence by preponderance. That is a burden shift. The language is there. On the first issue regarding that, the fact that on this issue of waiver, I do want to address something that was left over from my first time up here, which was this argument about the system put in place by the PTO regarding the preliminary response and the patent owner's response. As I think Judge Hughes had mentioned while we were discussing this, the patent donor need not file a patent owner's response. It may file only a preliminary response. Under the system that is set up currently by the board, if a patent owner were to file a preliminary response and then not file a patent owner's response, which is within their right, under this schema, a patent owner would waive all arguments made in that preliminary response. That is what the board is holding NRA-NUVASIV stands for, and that can't be the case. I don't understand that at all. If they don't file a response, then they're relying on their preliminary response. All the board is saying is if you file both, you have to tell us which arguments you're maintaining. Well, if that's the case, Your Honor, that's not what the board said in NRA — that's not what this Court references in NRA-NUVASIV. That's not what the board states in its regulations, and that's not what the board says here. The board says if the argument's in the preliminary response, it must show up in the patent owner's response, or it is waived. So if that is the schema, that schema falls under a logical consideration, and then when we — Even if you don't file a response at all? Have they ever said that, or have we ever said that? No, Your Honor, the law — You're stating a hypothetical that nobody's found to have existed. It's the logical conclusion of the law, which — If you don't file two responses, then the one response you filed states your arguments. But if you file a second one, you need to preserve all your arguments. If that's — Until the board reaches your illogical conclusion, which we'll address, then that's not what happened here. What happened is you filed a preliminary response, they said one of your arguments is wrong, and you didn't raise it in a way they found sufficient to preserve it. Okay, Your Honor. On the issue then that my friend mentioned regarding the argument being excised from post-institution briefing, as you mentioned, based on our reading of the statute, there's no excision of the argument, but again, the argument appears on Apex 529 through 530. Waiver versus forfeiture was mentioned before about how it's the same result. Regardless, however, as the score held in Google Tech, which was brought up by my friend, it specifically mentions that the difference there is important because it can have impacts on appeal, and thus that distinction is specifically worth regarding. Then finally on this issue of the board mentioning or incorporating its arguments into its final written decision, if that is the case, if the board is permitted to bring in its conclusions from pre-institution decisions into its final written decision, that argues for the same statutory construction which the patent owner has been arguing in this case, where if it was in the preliminary response, it can certainly be considered by the end. I see that my time has concluded. Unless Your Honor has any last questions, I'm happy to. Thank you to both counsel. The case is submitted.